UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:07-CV-80609-MARRA/JOHNSON

MONTE RESNICK, individually and on behalf
of others similarly situated,

                Plaintiff,

v.

OPPENHEIMER & CO. INC., a New York
Corporation,

                Defendant.
_____/

**DEFENDANT'S MOTION TO DISMISS COUNT II OF THE FIRST AMENDED COMPLAINT AND/OR FOR SUMMARY JUDGMENT, AND MEMORANDUM OF LAW[1]**

Defendant, Oppenheimer & Co. Inc. ("Oppenheimer" or "Defendant"), moves to dismiss Count II of Plaintiff Monte Resnick's First Amended Complaint ("Amended Complaint").  *See* Dkt. 44 & 46.  Plaintiff's pre-suit demand letter under the Florida Minimum Wage Act, § 448.110, Florida Statutes ("FMWA"), did not comply with the Act's pre-suit notice requirements.  It failed to provide Oppenheimer a meaningful opportunity to remedy any alleged

---

[1] Rule 12(b) specifically allows the court to accept and consider matters outside the pleadings offered in conjunction with a Rule 12(b)(6) motion. Fed. R. Civ. P. 12(b); *Prop. Mgmt. & Invs., Inc. v. Lewis*, 752 F. 2d 599, 604 (11th Cir. 1985) (affirming court's conversion of motion to dismiss into motion for summary judgment). Here Defendant is submitting Plaintiff's pre-suit notice and Defendant's response thereto as extrinsic evidence. *See* Tabs A and B.  If it considers such extrinsic evidence, the court must then convert the motion to dismiss into a motion for summary judgment, and the standards of Fed. R. Civ. P. 56 apply. *Id*.

1

wrongdoing, and avoid costly and unnecessary litigation. Because Plaintiff failed to meet this condition precedent to bringing suit under the FMWA, that claim must be dismissed.[2]

## I.     FACTUAL BACKGROUND.

Plaintiff Monte Resnick ("Plaintiff" or "Resnick") filed the initial Complaint in this case on July 10, 2007, Dkt. 1. Count II of the Complaint alleged that Oppenheimer violated the minimum wage provisions of Art. X, § 24 of the Florida Constitution, and the related provisions of the FMWA, by failing to pay its Florida financial advisors the appropriate minimum wage for all hours worked. Dkt. 1 at 8. Defendant moved to dismiss Count II arguing, in relevant part, that Plaintiff had completely failed to comply with the notice requirements of the FMWA because no pre-suit notice had been submitted to Oppenheimer prior to filing the Complaint. Dkt. 9 at 3. The Court agreed and dismissed Count II without prejudice, nothing the importance of the FMWA notice requirements which sought "to encourage prompt resolution of wage disputes short of litigation." Dkt. 24 at 5-6.

On February 28, 2008, Plaintiff submitted a purported FMWA pre-suit notice. *See* 02/28/08 Letter from H. Anderson to M. Zelek, attached as Tab A. The notice stated, in relevant part, that:

> Mr. Resnick is estimated to have worked for Oppenheimer from about June 2004 until about September 30, 2005. During 2005, the mandatory minimum wage in Florida was $6.15 per hour, effective May 2, 2005. *In the period* from the effective date of this state minimum wage until his departure from Oppenheimer, Mr. Resnick worked *approximately* 55 hours per week *on average*. Accordingly, he was not paid *at least* $2,785.29 in minimum wages pursuant to applicable Florida law.
>
> *See* Tab A (emphasis added).

---

[2] The allegations in Count I of Plaintiff's First Amended Complaint, *see* Dkt. 44 ¶¶ 6-11, 24-27, are identical to those in Plaintiff's original Complaint, *see* Dkt. 1 ¶¶ 6-11, 24-27. Oppenheimer has already answered the allegations regarding Count I. *See* Dkt. 24.

Defendant's response to the notice indicated that it was deficient and insufficient under the FMWA.  *See* 03/14/08 Letter from L. Garriga to H. Anderson, attached as Tab B. Yet, without curing the deficiencies, Plaintiff filed a First Amended Complaint reasserting his FMWA claim as Count II on March 19, 2008.  *See* Dkt. 44 & 46.

## II.  MEMORANDUM OF LAW.

### A.  The FMWA Notice Requirements.

Before any court action may be filed, the FMWA requires that the plaintiff first notify the employer in writing of his or her intent to bring an action so that the employer has an opportunity to resolve the claim within 15 days.  *See* Section 448.110(6)(a) and (b).  The FMWA provides that:

> The notice must identify the minimum wage to which the person aggrieved claims entitlement, the *actual or estimated work dates and hours for which payment is sought*, and the *total amount of alleged unpaid wages* through the date of the notice.
>
> The employer shall have 15 calendar days after receipt of the notice *to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved.* . . .  If the employer fails to pay the total amount of unpaid wages or otherwise resolve the claim to the satisfaction of the person aggrieved, then the person aggrieved may bring a claim for unpaid minimum wages, the terms of which must be consistent with the contents of the notice.

Section 448.110(6)(a) and (b), Fla. Stat. (emphasis added).

### B.  The Legislative Purpose Requires Strict Compliance with the Pre-Suit Notice Requirements.

Courts should look at the purpose of legislation in deciding whether strict compliance with its provisions is required.[3]  *Pattry v. Capp, M.D.*, 633 So. 2d 9, 11 (Fla. 1994).[4]  The

---

[3] It is well-established that "legislative intent is the polestar that guides a court's statutory construction analysis." *Knowles v. Beverly Enters.-Florida, Inc.*, 898 So. 2d 1, 5 (Fla. 2004).  As a result, "the [Florida Supreme] Court has often noted [that its] obligation is to honor the obvious legislative intent and policy behind an enactment, even where that intent requires an interpretation that exceeds the literal language of the statute." *Byrd v. Richardson-Greenshields Sec., Inc.*, 552 So. 2d 1099, 1102 (Fla. 1989).  While the statute's plain language is important, "[i]n addition to the statute's plain language, a basic rule of statutory construction provides that the Legislature does not intend to enact useless provisions, and courts should avoid readings that

legislative history of the FMWA indicates that "[t]he bill accomplishes the following . . . . It requires employees to notify employers and give them 15 days to resolve any claims for unpaid minimum wages before filing suit." HOUSE OF REPRESENTATIVES, STAFF ANALYSIS, H. Judiciary Comm., H.B.-7001, 108th Sess., at 2 (Fla. 2006). This Court acknowledged this purpose stating that the notice provision "seeks to encourage prompt resolution of wage disputes short of litigation. . . ." Dkt. 24 at 5.

Judicial interpretation of similar notice requirements under other Florida statutes is also instructive here. *Pub. Health Trust of Dade-County v. Knuck*, 495 So. 2d 834, 836 (Fla. 3d Dist. Ct. App. 1986) (finding guidance in decisions interpreting notice requirement under different Florida statute with similar language). Courts have found that pre-suit notice provisions in Florida statutes are "designed to facilitate the amicable resolution of [ ] claims" and "promote settlement of meritorious claims early in the controversy in order to avoid full adversarial proceedings." *Pattry*, 633 So. 2d at 11-12.

Consistent with these goals of pre-suit notice requirements, the notice provided to an employer must be detailed enough for the employer to review the "work dates and hours for which payment is sought" and corroborate the figures and calculations used by the employee to reach that "total amount." *See Metro. Dade County v. Coats*, 559 So. 2d 71, 72 (Fla. 3d Dist. Ct. App. 1990) (pre-suit notices need to describe the claim with sufficient detail to enable the recipient of the notice to investigate the claim); *LaRiviere v. South Broward Hospital District*,

---

would render part of a statute meaningless." *State v. Goode*, 830 So. 2d 817, 824 (Fla. 2002). Moreover, "[i]t is axiomatic that all parts of a statute must be read *together* in order to achieve a consistent whole." *Forsythe v. Longboat Key Beach Erosion Control Dist.,* 604 So. 2d 452, 455 (Fla. 1992) (emphasis in original). In sum, "the purpose of all rules relating to the construction of statutes is to discover the true intention of the law." *State v. Egan*, 287 So. 2d 1, 4 (Fla. 1973).

[4] In *Pattry*, the Court ultimately found that strict compliance with the required mode of service—certified mail return receipt requested—was not mandated since hand delivery would effect the same purpose.

889 So. 2d 972, 974 (Fla. 4th Dist. Ct. App. 2004) (notice "must be sufficiently direct and specific to reasonably put the department on notice of the existence of the claim and demand"); *see also Knuck*, 495 So. 2d 834, 836 (requiring strict compliance with statutory provisions of notice requirement).

### C. The Pre-Suit Notice Letter Denied Oppenheimer a Meaningful Opportunity to Resolve the FMWA Claim with Plaintiff.

Plaintiff's February 28th pre-suit demand letter is deficient and not consistent with these goals or the requirements of the FMWA.  *See* Tab A.  The letter does not identify the specific *dates*[5] or the specific number of *hours* Plaintiff worked on those dates for which he is seeking payment, which would allow Defendant to determine if Plaintiff in fact worked those hours on those dates.  Rather, it simply identifies a time *period* (*see* Tab A, "[i]n the *period* from the effective date of this state minimum wage until his departure . . ."), and an *approximate average* of worked hours for *all* weeks (" . . . *approximately* 55 hours per week on *average* . . .").  Plaintiff also identified "the total amount of alleged unpaid wages" as "*at least* $2,785.29," without explaining how that figure was computed and, without specific dates and hours, Oppenheimer cannot confirm how Plaintiff reached that number.  *See* Tab A.  As such, Defendant has been deprived of a reasonable ability to *resolve* the alleged claims.  *See* Fla. Stat. 448.110(6)(b).

### III. CONCLUSION

The Court should dismiss Count II of the First Amended Complaint for failure to comply with the pre-litigation notice requirements of the FMWA.

---

[5] The online Compact Oxford English Dictionary defines "date" as "the day of the month or year as specified by a number."  *See* COMPACT OXFORD ENGLISH DICTIONARY 251 (Catherine Soanes & Sara Hawker eds., Oxford University Press 3d ed. 2005), *available at* http://www.askoxford.com/concise_oed/date_1?view=get.

DATED this 4th day of April, 2008.

                                    Respectfully submitted,

                                    s/ Mark E. Zelek
                                    Mark E. Zelek
                                    Florida Bar No. 667773
                                    Larissa C. Garriga
                                    Florida Bar No. 051830
                                    MORGAN, LEWIS & BOCKIUS LLP
                                    5300 Wachovia Financial Center
                                    200 South Biscayne Boulevard
                                    Miami, Florida 33131-2338
                                    Telephone:   305.415.3303
                                    Facsimile:   1.877.432.9652 (toll free)
                                    lgarriga@morganlewis.com

## CERTIFICATE OF ELECTRONIC FILING AND SERVICE

I HEREBY CERTIFY that on April 4th, 2008, I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system which will send notification of such filing to Plaintiff's attorneys, Gregg I. Shavitz, Esquire, and Hal B. Anderson, Esquire, Shavitz Law Group, P.A., 1515 S. Federal Highway, Suite 404, Boca Raton, Florida 33432 at gshavitz@shavitzlaw.com and hal.anderson@shavitzlaw.com.

                                    s/ Mark E. Zelek
                                    Mark E. Zelek